UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
LORENZO WHITE,

                      Plaintiff,

- against -

NATIONAL SPECIALTY INSURANCE
COMPANY,

                      Defendant.
-------------------------------------------------------- x

**MEMORANDUM & ORDER**

13 CV 2319 (RJD) (MDG)

DEARIE, District Judge

On March 18, 2007, at the Pier 2110 nightclub in Harlem, plaintiff Lorenzo White was knocked unconscious by an unidentified assailant who hit him in the head with a bottle of champagne. White secured a $300,000 default judgment in state court against Pier 2110. At a brief inquest, the state court found the nightclub negligent for not controlling its premises. In this insurance dispute, he seeks to compel payment from Pier 2110's insurer, defendant National Specialty Insurance Company ("NSIC"). NSIC moves for summary judgment on the basis that the insurance policies at issue specifically excluded injuries stemming from assault, battery, or similar acts of violence. For the reasons set forth below, the motion for summary judgment is granted.

NSIC issued two insurance policies to Pier 2110, both of which contain assault and battery exclusions that preclude coverage for injuries or damages "arising out of any assault, battery, fight, altercation, misconduct or similar incident or act of violence."[1] At his deposition, White said that he "know[s] for a fact" that the champagne bottle that struck him in the head was

---

[1] The contents of the assault and battery exclusions are not in dispute, and though White argues otherwise, the copies of the exclusions signed by Pier 2110 are legible.

in the hand of an unknown perpetrator (as opposed to thrown across the room). He also acknowledged that "getting hit with a bottle is violent." His state court complaint alleges that he was "caused to be negligently, intentionally, wrongfully, willfully, maliciously, and with gross negligence, physically detained, assaulted, beaten, battered and falsely arrested by" Pier 2110. At the state court inquest, his attorney described the incident as a "violent and unprovoked attack." And the surrounding circumstances reinforce the point: the incident triggered a brawl, six other patrons were hospitalized, and shots were fired outside the nightclub. Despite White's protestations to the contrary, the broad and unambiguous language of the assault and battery exclusions covers the incident at Pier 2110.[2]

White argues that his claim is not precluded by the assault and battery exclusions because his state court judgment is based on negligence rather than an intentional tort. The assault and battery exclusions, however, specifically provide that "no coverage is provided under this policy if the underlying facts constitute an assault and/or battery irrespective of whether the claim alleges negligent hiring, training, supervision and/or retention against the insured, or for any other negligent actions of the insured." Because White's negligence claim against Pier 2110 would not exist "but for" the violent attack, it is not covered. The Court of Appeals has repeatedly interpreted similar assault and battery exclusions in this manner. See Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd., 88 N.Y.2d 347, 352-53 (1996); U.S. Underwriters Ins. Co. v. Val-Blue Corp., 85 N.Y.2d 821, 823 (1995).

---

[2] Because White's injuries stemmed from an intentional violent act, the cases that he cites are not applicable here. See, e.g., 20-35 86th St. Realty v. Tower Ins. Co., 106 A.D.3d 478, 479-80 (1st Dep't 2013) (question of fact existed as to arsonist's knowledge that the building he burned was occupied, and thus whether he intended to harm the occupants); Anastasis v. Am. Safety Indem. Co., 12 A.D.3d 628, 630 (2d Dep't 2004) (bouncer negligently injured plaintiff); Essex Ins. Co. v. T-Birds Nightclub & Rest., Inc., 229 A.D.2d 919, 920 (4th Dep't 1996) (same).

White also contends that NSIC is estopped from disclaiming coverage by New York Insurance Law § 3420(d)(2) because it—acting through its managing general agent and third-party administrator RCA Insurance Group ("RCA")—failed to provide Pier 2110 with "written notice as soon as [was] reasonably possible" of its denial of coverage.[3] This argument is premised on two factual inferences that White contends should be drawn in his favor. Neither inference is availing.

First, White argues that there is a disputed question of fact as to the date upon which RCA (and thus NSIC) was alerted to his claim. According to NSIC, it learned of the potential claim on October 19, 2007, when Pier 2110's insurance broker faxed it a letter from White's lawyer. This date is corroborated by documentary evidence of the October 19 fax. White, on the other hand, argues that RCA's failure to invoke "late notice" from Pier 2110 as a reason for disclaiming coverage suggests that it was notified of the potential claim well prior to the October 19 fax. This farfetched theory—which would require the factfinder to (1) make a series of unsupported assumptions about Pier 2110's actions and RCA's policies and practices and (2) disregard the sworn affidavits and deposition testimony of RCA employees—does not raise a triable issue of fact. The only reasonable inference that can be drawn from the record is that NSIC first learned of White's claim on October 19, 2007.

Second, the parties dispute when RCA (and thus NSIC) notified Pier 2110 that it was disclaiming coverage. NSIC contends that RCA mailed a disclaimer letter to Pier 2110 on

---

[3] N.Y. Ins. Law § 3420(d)(2) provides in total: "If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."

October 29, 2007. In support of this contention, NSIC puts forward the letter itself (which is dated October 26, 2007), a declaration from an RCA employee attesting that the letter was mailed to Pier 2110 by both certified and regular mail, and a certified mail proof of purchase dated October 29, 2007. White, on the other hand, cannot point to any evidence that suggests that RCA did not send the letter. He simply argues that NSIC has not met its burden of proof. At the summary judgment stage, however, White must point to some evidence supporting his version of events. Finally, it bears noting that White's argument is particularly brazen given that his lawyer was copied on the October 26, 2007 denial of coverage letter and acknowledges its receipt.

The only reasonable interpretation of the record is that NSIC received notice of the potential claim on October 19, 2007, received additional information from White's lawyers on October 23, and informed Pier 2110 of the denial of coverage in a letter mailed on October 29. Viewing the record in the light most favorable to White, there was <u>at most a ten-day period</u> between the point at which NSIC learned of the potential claim and the point at which it informed Pier 2110 that it was denying coverage.[4]

This ten-day period is reasonable as a matter of common sense. It is also reasonable as a matter of law. See Matter of Allcity Ins. Co., 576 N.Y.2d 87, 88 (1991) (20-day delay

---

[4] The reasonableness of a delay in disclaiming coverage "is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." First Fin. Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 68-69 (2003). NSIC argues that the clock started on October 23, 2007, when it learned the details of White's injury, rather than on October 19, when it merely learned that he had retained counsel "to pursue a claim for personal injuries and damages . . . as a result of an accident[.]" NSIC appears to be correct. See Matter of Allcity Ins. Co., 576 N.Y.2d 87, 88 (1991) (measuring timeliness of disclaimer from the point that insurer was served with arbitration demand specifying details of claim). Nonetheless, the Court need not resolve the issue because, as set forth below, the delay was reasonable even if measured from October 19.

4

reasonable without further explanation); Quincy Mut. Fire Ins. Co. v. Enoe, 107 A.D.3d 775, 776 (2d Dep't 2013) (21-day delay reasonable without further explanation); Blue Ridge Ins. Co. v. Jiminez, 7 A.D.3d 652, 653 (2d Dep't 2004) (27-day delay reasonable as a matter of law); see also U.S. Underwriters Ins. Co. v. 614 Constr. Corp., 142 F. Supp. 2d 491, 495-96 (S.D.N.Y. 2001) (Sprizzo, J.) (45-day delay reasonable when caused by prompt, good faith investigation). NSIC did not violate Section 4230(d)(2) and is not estopped from denying coverage.

For the reasons set forth above, NSIC's motion for summary judgment is granted.

SO ORDERED.

Dated: Brooklyn, New York
August 6, 2014

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge